UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ISHMAEL KEITH REID,**<br><br>        **Defendant.** | Crim. Action No. 1:25-mj-226 |

## MR. REID'S OPPOSITION TO THE GOVERNMENT'S REQUEST TO OVERTURN MAGISTRATE JUDGE'S RELEASE ORDER

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987))

Ishmael Reid, by and through counsel, respectfully opposes the government's request to overturn the release order issued by Magistrate Judge Zia Faruqui, pursuant to the Bail Reform Act, 18 U.S.C. § 3142.

### Introduction

Ishmael's life story reflects discipline, sacrifice, and service to others. Born and raised in Southeast D.C. by a single working mother, he rose above the challenges of his environment, excelling in school and graduating with honors before enlisting in the military. After serving his country overseas, he returned home to continue his commitment to public service as a special police officer. When his mother's health declined, Ishmael stepped into the role of primary caregiver—working full time, managing the household, and pursuing his bachelor's degree online—all without ever

1

encountering trouble with the law until this case. His history of service and responsibility demonstrates that he is deeply rooted in his community and is an ideal candidate for release.

On September 19, 2025, Ishmael was arrested on an arrest warrant out of this district in connection with a complaint charging him with one count of Distribution of Child Pornography, in violation of 18 U.S.C. §2252(a)(2).

Following a detention hearing, Magistrate Judge Zia Faruqui released Ishmael and imposed extraordinarily strict conditions, including the following:

- Home incarceration
- Third Party Custodian- Lenora Reid
- Location Monitoring
- Surrender passport and do not apply for a passport during pendency of this case
- No use of the internet
- Disable WiFi in the home
- No contact with minors
- Do not possess firearms
- Agree to submit to search of person or property
- High Intensity Supervision Program

The government immediately sought a stay of the release order and appealed the Magistrate Judge's Order to this Court. In its Motion for Review, the government fails to establish that the conditions issued by the Magistrate Judge are inadequate

to protect the safety of the community and ensure Ishmael's appearance in court. This Court should decline to overrule the considered decision of the Magistrate Court.

## ARGUMENT

### I. Legal standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B).

The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

The government bears the burden of demonstrating by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. While there is a presumption for detention in this case, the presumption

triggers a burden of production.[1] The following facts and circumstances easily rebut that presumption: first, Mr. Reid has strong ties to his community and his mother is willing and able to strictly supervise him 24-hours a day; second, Mr. Reid has had no contacts with the criminal legal system prior to the instant alleged offense; third, while the allegations in the statement of offense are serious, this very Court has upheld release of defendant's accused of more reprehensible conduct and was able to reasonably unsure the safety of society through the strictest conditions.

Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Reid be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

**A. The Nature and Circumstances of the Offense Charged**

---

[1] A rebuttable presumption does not require that the defendant carry the burden of proof or persuasion but rather, requires the defendant "to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 A.2d 364, 371 (D.C. Cir. 1985). Instead, a defendant "bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." "A defendant's burden of production to rebut the Bail Reform Act's presumption of detention is not heavy." *United States v. Dabney*, 2020 WL 1866750 at *2(D.D.C. 2020) (finding presumption rebutted with strong ties to the community, family supportant lack of adult criminal history); see also *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

Ishmael engaged in fantastical conversations that had no basis in reality. He never made any travel plans to the referenced countries or on the referenced dates—just as he never committed the grotesque acts described. While the content of these online exchanges was undoubtedly disturbing, it was not criminal, with the sole exception of a single instance of sharing one video. Courts in this District have consistently released defendants whose conduct was far more egregious, underscoring that detention here would be unwarranted and inconsistent with precedent.

Another case pending in this district is instructive here. In *United States v. Jason Rehman*, 23-CR-64(CJN), the defendant, who was 30 years old, was charged with, *inter alia*, Enticement of a Minor, for "sexting" with a 15-year-old minor victim and instructing her to send him lewd videos. Mr. Rehman allegedly admitted to traveling to having sex with the MV twice. Mr. Rehman was released under strict conditions and has incurred no violations of release.[2]

---

[2] *See* 23CR64, ECF. No. 9, Order releasing Jason Rehman to the High Intensity Supervision program.

| Name | Case No. | Pretrial Release Date | Conditions | Magistrate Judge | District Judge |
|---|---|---|---|---|---|
| Monsoor Ali | 24-cr-043 | 2/6/2024 | Home incarceration; Third-Party Custodian; GPS monitoring; surrendor passport, avoid minor contact; psych treatment; no weapons possession; allowed a phone with no WiFi or data | Harvey | AliKhan |
| George Oglesbee | 22-cr-177 | Stayed pending Gov. motion for review of release order; Howell approved release on 8/30/2020 | Home Incarceration; surrender passport; no minor contact; no firearms; GPS; no computers; Stepped down from home incarceration on 9/29/2020 to continue to work | Robinson/Harvey | Howell |
| Richard Pavel | 25-cr-277 | 9/9/2025 | Home Incarceration; Third-party custodian; home visitors approved by PSA; no minors; no weapons; no narcotics; drug testing; surrender passport; GPS; | Sharbaugh | Sooknanan |

While, like defendants listed here, the nature and circumstances of the alleged offense are undoubtedly serious, this factor does not militate in favor of pre-trial detention. Instead, as the Magistrate Court identified, there are conditions that will ensure the safety of the community and Ishmael's return to court.

## B. The Weight of the Evidence

The evidence that Ishmael shared one brief sexually explicit video in an online forum appears strong, as does the evidence that he engaged in a single online conversation with a 16-year-old on Snapchat, during which he sent an image of a penis. Critically, there is no evidence that Ishmael and this individual ever met in person, nor that he has ever engaged in any hands-on conduct or made plans to do so. Thus, while the government may argue that the evidence underlying the charged conduct is strong, there are ample conditions of release available to ensure that Ishmael cannot engage in similar behavior again.

6

**C. Mr. Reid's History and Characteristics**

Ishmael was born and raised in Southeast D.C. by a single working mother. Despite the challenges of growing up in a difficult neighborhood, he resisted negative influences and distinguished himself academically, graduating from high school with honors before immediately entering the military. He went on to serve his country overseas with honor.

When his service concluded, Ishmael returned home and continued his public service as a special police officer. While he valued his independence, he gave it up without hesitation to care for his mother when she underwent open heart surgery and a hip replacement in the same year. He assumed responsibility for her daily care—working full time, managing the household, and providing meals and support—while also pursuing his bachelor's degree online.

Up until this incident, Ishmael had never been in trouble with the law. His record of service, responsibility, and resilience demonstrates strong ties to his community and a life characterized by discipline, sacrifice, and care for others. These qualities strongly support his release.

**D. The Nature and Seriousness of the Danger to Any Person in the Community**[3]

---

[3] The government does not focus on risk of flight in its pleading. To the extent risk of flight is a concern, Mr. Reid passport has already been seized along with all his devices. Ishmael does not pose a risk of flight.

7

While his alleged conduct was inappropriate and if convicted, he will face serious consequences for it, his long history of making positive decisions against all odds must be considered when assessing whether he is a danger to the community. His arrest for this serious offense was a shock to him and his family. Suffice it to say, he has been scared straight. The Court can rest assured he will not communicate with anyone online, let alone anyone under the age of 18. To the extent there's a hypothetical danger to minors, the very strict conditions imposed by the Magistrate Court would reasonably assure the safety of the community. In addition to those conditions, Ishmael's parents have pledged to supervise him 24 hours a day.

## II. Statistics Demonstrate That it is Extremely Rare for Federal Defendants on Bond to Flee or Recidivate

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[4] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[5] Even in districts

---

[4] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*,
No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[5] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to

that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[6] The below chart reflects this data:



Despite the statistically low risk of recidivism that defendants like Mr. Reid pose, the government recommends detention in 71% of cases.[7]

Although the available statistics do not provide detail about the specific release conditions that were in place for any defendant who reoffended while on release, it is likely that they were less stringent than those imposed by the Magistrate Court here. Mr. Reid must be released because the government has not presented evidence that

---

highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.

[6] *Id*

[7] *See* AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

shows that, particularly given the extra supervision his parents would provide, he would be among the approximately 2% of defendants who commit another crime while on pretrial release.

## CONCLUSION

The Magistrate Judge correctly applied the Bail Reform Act and concluded that that there were conditions that he could impose that would reasonably assure the defendant's appearance and the safety of the community. For all of the reasons stated above, the Magistrate Court's Order should not be reversed.

Respectfully Submitted,

**ISHMAEL REID**

by counsel:

A.J. Kramer
Federal Public Defender for the
District of Columbia


_____/s/_____
ALEXIS M. GARDNER
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500